STATE OF MAINE                              SUPERIOR COURT
CUMBERLAND, SS                             CIVIL ACTION
                                          DOCKET NO. CV-

PETE PERRON,

     Plaintiff,

v.

COVETRUS, INC.

     Defendant,

---

## COMPLAINT

---

Plaintiff Pete Perron, through counsel, files this Complaint for unpaid wages against the above listed Defendant.

### STATEMENT OF THE CASE

1.    Plaintiff Pete Perron was employed by Defendant Covetrus, Inc. ("Covetrus") between approximately March 2021 and March 2026.

2.    Perron was employed pursuant to an Employment Agreement (the "Employment Agreement") throughout the entirety of his employment with Covetrus. The Agreement initially expired on April 30, 2024, but renewed automatically by its terms until Perron gave notice of termination in approximately February 2026.

3.    Pursuant to the terms of the Employment Agreement, Covetrus was required to pay Perron an annual bonus that was to have been paid on or before March 15, 2026.

4.    Covetrus unlawfully failed to pay Perron his owed bonus in violation of 19 Del. C. §§ 1103 & 1113.

5.    Perron seeks compensation for Covetrus' failure to pay his owed bonus.

1

## PARTIES

6.    Plaintiff Pete Perron is a resident of Orange County, Florida.

7.    Covetrus, Inc. is a Delaware corporation authorized to do business in Maine with a principal home office address of 12 Mountfort St., Portland, ME 04101.

## VENUE & JURISDICTION

8.    Venue is proper in this court as the parties have agreed pursuant to the express terms of the Employment Agreement that all matters arising out of or related to the Employment Agreement shall be brought in Maine courts.

9.    The Court has personal jurisdiction over Covetrus as it agreed pursuant to Section 15(I) to submit to the jurisdiction of any Maine state court. Alternatively, Covetrus maintains its headquarters in Portland, Maine.

## FACTS

### The Employment Agreement

10.    The Employment Agreement by its terms was to continue until April 30, 2024, but would be automatically extended and renewed for a year unless either Covetrus or Perron gave written notice of non-renewal.

11.    Neither Perron nor Covetrus gave notice of non-renewal prior to the Employment Agreement's termination date and it was renewed through April 30, 2025 and again through April 30, 2026.

12.    Pursuant to the terms of the Employment Agreement, Covetrus and Perron agreed that the Employment Agreement would be governed by, construed and enforced in accordance with Delaware law.

2

13. Further, pursuant to the terms of the Employment Agreement, Covetrus and Perron agreed to subject themselves to the exclusive jurisdiction of any Maine state court or federal court sitting in the state of Maine in any action or proceeding arising out of or relating to the Employment Agreement.

14. Section 3(a) of the Employment Agreement, titled "Annual Incentive Compensation" states:

> The Executive [Perron] shall be entitled to participate in an annual bonus program established by the Company [Covetrus] with a target annual bonus amount of sixty-five percent (65%) of Base Salary, subject in all respects to achievement of performance goals to be established by the Company (the "Annual Bonus"). Any bonus earned by the Executive shall be paid after the end of the fiscal year to which it relates, at the same time and under the same terms and conditions as other executives of the Company; provided that the Executive remains employed by the Company on the date the bonus is paid (other than due to non-renewal or termination by the Company without Cause or by the Executive for Good Reason) and in no event shall the Executive's bonus be paid later than March 15 of the fiscal year following the fiscal year for which it was earned. Any Annual Bonsu payable with respect to the 2021 performance year shall be pro-rated based on the Effective Date.

15. Per the Employment Agreement, Perron was permitted to voluntarily terminate his employment upon thirty (30) days' prior written notice.

### Perron's Employment

16. Covetrus describes itself as a "tech-enabled veterinary-practice improvement company."

17. Covetrus hired Perron on or about April 2021 as its President, Strategic Partnerships, subject to the terms of the Employment Agreement.

18. Covetrus was solely charged with creating and issuing pay statements to Perron.

19.     On or about January 19, 2026, Perron reached out by phone to Covetrus CEO Ben Wolin to let Wolin know that he would be turning in his notice of termination. In that call, Wolin asked Perron to wait so that Wolin could make arrangements for Perron's departure.

20.     Perron did not hear anything further from Wolin regarding his resignation until Perron received an email from Wolin on February 11, 2026.

21.     Wolin's February 11, 2026 email indicated that Graham Rhodes would be moving into an interim President role and that Covetrus would be announcing Perron's last day as February 27, 2026 (but further noted that because of a vacation Perron already had scheduled his actual last day in office would be February 19, 2026).

22.     Perron responded by email later on February 11, 2026.

23.     In Perron's February 11, 2026 email he relayed to Wolin that he had offered to stay through March, but that he had received no further communication from Wolin until he received Wolin's February 11, 2026 email.

24.     Perron further noted in his February 11, 2026 email that the terms of their contract, the Employment Agreement, required him to give written notice of his resignation which would then trigger a 30 day notice period. Perron stated that would keep him working at Covetrus through March 16, 2026.

25.     Wolin responded to Perron's February 11, 2026 email on February 12, 2026.

26.     In Wolin's February 12, 2026 email he described his frustration with how Perron resigned but stated that he would not "let this become a legal issue" and that if Perron insisted he "will pay you another two weeks." Wolin did not reference the obligations of the Employment Agreement otherwise in his February 12, 2026 email.

27.     Perron responded to Wolin's February 12, 2026 email later that same day.

28. In Perron's February 12, 2026 email he confirmed that he would work through March 16, 2026 and that he would do his best to ensure a smooth transition, while still noting his disagreement with Wolin's characterization of events.

29. Wolin, by email dated February 13, 2026, ultimately announced Perron's impending to all global employees of Covetrus.

30. Despite the email exchange between Perron and Wolin on February 11 and 12, 2026, Perron's last day with Covetrus was March 16, 2026.

31. Covetrus paid Perron for the final time on or about April 24, 2026 for the period April 5, 2026 through April 18, 2026.

**Covetrus Paid Perron an Annual Bonus in Each Year of his Employment Except 2026**

32. Each year Covetrus would set certain financial goals and plan on paying its executives an annual bonus if Covetrus met those goals. This was described internally as a Short Term Incentive Plan ("STIP").

33. These STIP related annual bonuses are what was described in Section 3(a) of the Employment Agreement.

34. These STIP payments, or annual bonuses, are employment benefits based upon the work executives and other employees of Covetrus, like Perron, did in the previous year.

35. However, in most years of Perron's employment with Covetrus, Covetrus modified its STIP goals and issued annual bonuses on a reduced percentage basis to Perron and other executives, including Graham Rhodes, rather than zeroing out potential annual bonuses.

36. In each year Covetrus modified its STIP goals, Covetrus paid Rhodes and Perron each what it described as an annual bonus based on an equal percentage of their respective salaries.

37. In those years, that Covetrus' payments to Rhodes and Perron were based upon an equal percentage of their respective salaries was appropriate per the terms of the Employment Agreement, Section 3(a) of which obligated Covetrus to pay Perron an annual bonus after the end of the fiscal year to which it relates "at the same time and under the same terms and conditions as other executives" of Covetrus.

38. Upon information and belief, Rhodes had an employment agreement with Covetrus that contained a similar if not identical provision to Section 3(a) of the Employment Agreement.

39. Covetrus paid Perron what it chose to describe as an "Annual Bonus" in or around March of each year of Perron's employment except for 2026.

40. Covetrus could have chosen to describe the bonus it paid to Perron on the below dates as something else, as it did when it paid Perron what it described as a "Sign-on Bonus" on or about May 14, 2021 in the gross amount of $150,000. This pay summary covered the period beginning April 26, 2021 through May 9, 2021.

41. On or about March 14, 2022, Covetrus paid Perron what his pay summary (2022 – 10 – 1) described as an "Annual Bonus" in the gross amount of $128,455.85. This pay summary listed its period beginning and ending date both as March 14, 2022.

42. On or about March 15, 2023, Covetrus paid Perron what his pay summary (2023 – 11 – 1) described as an "Annual Bonus" in the gross amount of $117,837.22. This pay summary listed its period beginning and ending date both as March 15, 2023.

43. On or about March 15, 2023, Covetrus retracted from Perron what his pay summary (2023 – 13 – 1) described as an "Annual Bonus" in the gross amount of $117,837.22. This pay summary listed its period beginning and ending date both as March 15, 2023.

44.     On or about March 31, 2023, Covetrus paid Perron what his pay summary (2023 – 13 – 1) described as an "Annual Bonus" in the gross amount of $117,837.22. This pay summary listed its period beginning and ending date both as March 15, 2023.

45.     On or about March 15, 2024, Covetrus paid Perron what his pay summary (2024 – 11 – 1) described as an "Annual Bonus" in the gross amount of $258,879.22. This pay summary covered the period beginning February 25, 2025 through March 9, 2025.

46.     On or about April 4, 2025, Covetrus paid Perron what his pay summary (2025 – 14 – 1) described as an "Annual Bonus" in the gross amount of $246,568.35. This pay summary listed its period beginning and ending date both as April 4, 2025.

47.     Covetrus did not pay Perron an "Annual Bonus" in 2026.

**Covetrus Planned on and did Pay Annual Bonuses to other Executives**

48.     In early March 2026, Perron attended several high level meetings within Covetrus wherein there was discussion and planning on paying Covetrus employees, including executives, an annual bonus as they had in years past.

49.     As it had in years past, Covetrus planned on modifying its 2025 STIP and paying its executives a reduced percentage of their standard 2025 STIP.

50.     Covetrus paid Rhodes his 2025 STIP annual bonus in or around March 15, 2026.

51.     Upon information and belief, Covetrus described the bonus it paid Rhodes in or around March 15, 2026 as an "annual bonus."

52.     Perron was employed with Covetrus when it paid Rhodes his annual bonus.

**Covetrus Fails to Pay Perron his Annual Bonus in 2026**

53.     As noted above, Covetrus failed to pay Perron his annual bonus in 2026, despite its payment to Rhodes and despite its obligation in Section 3(a) of the Employment Agreement to pay

7

Perron an annual bonus "at the same time and under the same terms and conditions as other executives" of Covetrus.

54.   By letter dated April 21, 2026, Perron demanded his unpaid bonus from Covetrus.

55.   By email dated April 22, 2026, Covetrus denied owing Perron an annual bonus, characterizing payments it made to other executives as "one-time discretionary awards made outside the STIP."

56.   At this point, however, Covetrus had for five years running made a routine of altering its STIP goals for a given year and issuing annual bonuses to Perron and other executives pursuant to their respective employment agreements.

57.   Nonetheless, Covetrus has as of the date of this filing refused to pay Perron his earned annual bonus pursuant to the terms of the Employment Agreement.

## CLAIMS FOR RELIEF

### COUNT I:
### VIOLATION OF THE DELAWARE WAGE PAYMENT AND COLLECTION ACT
### 19 DEL. C. § 1101 *et seq.*

58.   Plaintiff Perron incorporates all previous paragraphs.

59.   Defendant Covetrus employed Plaintiff Perron as that term is used in 19 Del. C. § 1101(a).

60.   Defendant Covetrus failed to pay Plaintiff Perron his annual bonus in violation of both the terms of the Employment Agreement that incorporated by law all applicable state wage laws.

61.   Defendant Covetrus failed to pay Plaintiff Perron his earned annual bonus by either the next date wages would be paid or within three business days after he left his employment as required under 19 Del. C. § 1103.

62. Defendant Covetrus has no reasonable grounds for failing to pay Plaintiff Perron all wages due, and thus is subject to the penalties outlined in § 1103(b) including the lower of either ten percent of the unpaid wages for each day, except Sunday and legal holidays, upon which its failure continued, or an amount equal to the unpaid wages.

63. Defendant Covetrus is further liable to Plaintiff Perron for an award for the costs of the action, the necessary costs of prosecution and a reasonable attorneys' fee pursuant to § 1113(c).

## COUNT II:
## BREACH OF CONTRACT

64. Plaintiff Perron incorporates all previous paragraphs.

65. The Employment Agreement constitutes a valid and enforceable contract.

66. Plaintiff Perron performed all his obligations under the Employment Agreement.

67. Defendant Covetrus materially breached its obligation under the Employment Agreement to pay Plaintiff Perron his annual bonus in 2026.

68. As a direct and proximate result of Defendant Covetrus' breach, Plaintiff Perron suffered damages.

## COUNT III:
## UNJUST ENRICHMENT / QUASICONTRACT

69. Plaintiff Perron incorporates all previous paragraphs.

70. Defendant Covetrus employed Plaintiff Perron.

71. Defendant Covetrus entered into the Employment Agreement with Plaintiff Perron.

72. The Employment Agreement incorporated all applicable state and federal laws including, *inter alia*, those creating payment for all hours worked and a minimum wage. Any illegal term in that contracts must be replaced by a court in equity.

9

73.     Defendant Covetrus breached this agreement by failing to properly pay Plaintiff Perron his earned annual bonus. Alternatively Defendant Covetrus owes Plaintiff Perron in equity.

74.     Defendant Covetrus owes damages in law and equity, or alternatively must be disgorged from their ill-gotten gains.

### DEMAND FOR JURY TRIAL

Plaintiff Perron demands a jury for all issues so triable.

### PRAYER FOR RELIEF

Plaintiff respectfully request that this Court enter an order or orders:

a.    Awarding the Plaintiff unpaid wages pursuant to 19 Del. C. § 1101 *et seq.*;

b.    Awarding the Plaintiff liquidated damages and penalties pursuant to 19 Del. C. § 1101 *et seq.*;

c.    Awarding the Plaintiff costs and attorneys' fees pursuant to 19 Del. C. § 1101 *et seq.*;

d.    Awarding Plaintiff compensatory damages in an amount to be determined at trial.

e.    Awarding pre-judgment and post-judgment interest.

f.    Granting such other relief as this Court deems just and proper.

Dated: June 4, 2026

Respectfully Submitted.

Peter Mancuso, Esq.
Bar No. 005521
Borealis Law, PLLC
97 India St.
Portland, Maine 04101
207-619-0884
Peter@MaineWorkerJustice.com

*Attorneys for the Plaintiff*

10