**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| PETE PERRON,<br><br>Plaintiff,<br><br>v.<br><br>COVETRUS, INC.,<br><br>Defendant. | Civil Action No. 2:26-cv-00379-LEW |

# DEFENDANT COVETRUS, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO COVETRUS, INC.'S MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM

Pursuant to Maine Local Rule 7, Defendant Covetrus, Inc. ("Covetrus") submits this Reply in further support of its Motion to Dismiss the Complaint for Failure to State a Claim (ECF No. 13) and in response to Plaintiff Pete Perron's ("Perron") Opposition (ECF No. 22). The Motion should be granted because the Opposition never overcomes the dispositive terms of Perron's Employment Agreement or the documents governing the bonus program on which his claims depend. Section 3(a) of Perron's Employment Agreement made any annual bonus "***subject in all respects***" to Covetrus' achievement of company performance goals. ECF No. 14-1. Those goals were not met in 2025, the STIP pool was not funded, and the claimed bonus therefore never became earned or due. Perron cannot use the Delaware Wage Payment and Collection Act to convert that contingent compensation into wages, rewrite the Agreement through alleged past practice or discretionary payments to other executives, or repackage the same contractual theory as unjust enrichment. Because each claim fails under the Agreement's unambiguous terms and the materials integral to Perron's allegations, the Complaint should be dismissed.

**A. <u>Perron's STIP Bonus Is Not Recoverable Under the Delaware Wage Payment and Collection Act</u>.**

Perron contends that his annual bonus qualifies as "compensation due to an employee by reason of the employee's employment" and therefore constitutes wages under the Delaware Wage Payment and Collection Act. ECF No. 22 at 5. The cases on which Perron relies stand for the unremarkable proposition that guaranteed or earned compensation payments are recoverable as wages. But none of the cited authority applies to contingent payments like the 2025 STIP bonus payment at issue here.

*SCOA Industries, Inc. v. Bracken*, 374 A.2d 263 (Del. 1977), addressed only whether the plaintiff's Wage Act claim was barred by the one-year statute of limitations. *Id.* at 263 (noting that the court would "only discuss [the] issue" of whether the claim was time-barred). It did not consider whether a bonus is recoverable when an express condition precedent to payment is unsatisfied and is therefore not instructive here. The other case that Perron cites—*Thayer v. Tandy Corp.*, No. 153, 1987 Del. LEXIS 1237 (Del. Sept. 18, 1987)—is likewise distinguishable. There, the employer's manual provided that bonuses were earned "monthly," and the court accordingly held that the plaintiff could recover the portion accrued, and therefore earned, before his resignation. *Id.* at *2–3. Perron's STIP bonus, by contrast, could be earned only if Covetrus achieved its 2025 financial-performance objectives—a condition that indisputably did not occur. *See* ECF Nos. 14-2 and 14-3. Finally, *Masterson-Carr v. Anesthesia Services, P.A.*, No. N12C-11-107-MJB, 2014 Del. Super. LEXIS 483 (Del. Super. Ct. 2014), affirmatively supports Covetrus' position. The court permitted recovery of a bonus equal to 6.5% of the plaintiff's annual salary because "there were no performance goals that Plaintiff had to meet in order to receive that bonus." *Id.* at *28. By contrast, the plaintiff conceded—and the court agreed—that she could not recover an additional 1.5% of her annual salary as a bonus because that amount was discretionary and tied

to performance metrics. *Id.* at *25. *Masterson-Carr* thus confirms the dispositive distinction: a noncontingent bonus may constitute recoverable wages, but a bonus conditioned on unmet performance metrics does not. *Davis*, which Covetrus cites in its motion and which Perron attempts to distinguish, confirms the same principle. There, the court considered "Performance Payments" calculated by reference to the employer's revenue growth and operating-profit growth. *Davis v. Tristar Claims Mgmt. Servs., Inc.*, No. N23C-03-161 PRW CCLD, 2024 WL 885440, at *1–2 (Del. Super. Ct. Feb. 29, 2024). Although the plaintiffs received a payment tied to revenue growth, they received no operating-profit payment because the company failed to satisfy that performance metric. *Id.* The court held that the payments were not recurrent "wages" recoverable under the Wage Act, but contingent payments dependent on company revenue and profits. *Id.* at *6. Perron's STIP bonus is indistinguishable in that respect because it depended on Covetrus' achievement of specified company-performance goals and was never earned because those goals were not met.

In the end, the Wage Act cannot convert contingent compensation into earned wages. Section 3(a) made Perron's annual bonus expressly dependent on Covetrus' achievement of company-performance goals. ECF No. 14-1. Because Covetrus did not meet the applicable 2025 metrics and did not fund the STIP, the condition precedent failed and no bonus became earned or due. ECF Nos. 14-2 and 14-3. Perron therefore cannot recover that contingent payment under the Wage Act. *See Davis*, 2024 WL 885440, at *5–6.

### B. <u>Perron's Arguments in Support of His Breach-of-Contract Claim Ignore the Unambiguous Terms of the Employment Agreement.</u>

Perron's shifting interpretations of Section 3(a) share the same fundamental defect: each asks the Court to look past the Employment Agreement's clear and unambiguous language in favor of an interpretation directly contrary to its express terms. At various points, Perron relies on Covetrus' alleged past practices, recasts Section 3(a) as encompassing any bonus program

Covetrus might establish, disregards the provision's express condition precedent, or isolates one clause from the remainder of the provision. None of those approaches gives effect to the Employment Agreement as written. Instead, the range of competing interpretations Perron advances underscores the weakness of his claim because, at every turn, the unambiguous contractual language does not support the result he seeks. The Court should reject those arguments for several independent reasons.

*First*, Perron's waiver theory fails because waiver may relinquish an existing contractual right, but it cannot create a contractual obligation the parties never undertook. Even assuming Covetrus declined to enforce the STIP's original performance metrics in prior years, any such waiver would establish only that Covetrus elected not to insist on a condition maintained for its own benefit. *See In re Coinmint, LLC*, 261 A.3d 867, 893 (Del. Ch. 2021) ("Waiver is the voluntary and intentional relinquishment of a known right either conferred by statute or secured by contract. It implies knowledge of all material facts and an intent to waive, together with a willingness to refrain from enforcing those contractual rights."). It would not transform separate, discretionary payments to selected executives into a contractual entitlement owed to Perron, much less eliminate Section 3(a)'s express requirement that any annual bonus remain "subject in all respects" to Covetrus' achievement of company-performance goals. *Id.* at 892 (noting that waiver "may not be invoked to make a new contract, or to change radically the terms of the policy to cover additional subject matter"). Yet that is precisely what Perron asks the Court to do here.

Even so, the circumstances regarding the 2025 STIP Bonus Plan are dispositively different. Covetrus did not waive the performance condition and fund the STIP notwithstanding unmet metrics. Instead, it declined to fund the STIP because the performance metrics were not met and made distinct ***discretionary*** recognition payments. ECF Nos. 14-2 and 14-3. Nothing in the

Employment Agreement required Covetrus to extend those discretionary payments to Perron. Perron's waiver theory therefore does not preserve his breach-of-contract claim.

*Second*, Perron's various theories fail under settled principles of contract interpretation. Section 3(a) provides that any annual bonus was "***subject in all respects to achievement of performance goals to be established by [Covetrus]***." ECF No. 14-1 (emphasis added). Perron identifies no ambiguity in that language, and none exists. The provision is therefore reasonably susceptible to only one interpretation—Covetrus' achievement of the established performance goals was a condition precedent to any obligation to pay a bonus. *See Origis USA LLC v. Great American Insurance Company*, 345 A.3d 936, 952 (Del. 2025) ("Clear and unambiguous language is reasonably susceptible of only one interpretation.") (emphasis in original). Contemporaneous Covetrus records show that the company did not achieve its 2025 performance metrics and therefore did not fund the STIP pool. *See* ECF Nos. 14-2 and 14-3. Because the condition precedent failed, no contractual obligation to pay Perron a STIP bonus arose. That result follows directly from the Agreement's plain language, and Perron cannot rewrite Section 3(a) to create an obligation the parties did not include. *See Exit Strategy, LLC v. Festival Retail Fund BH, L.P.*, 326 A.3d 356, 364 (Del. 2024) (explaining that, under Delaware's "objective theory of contracts," the parties' intent is determined from the "four corners of the agreement"). Nor may he rely on Covetrus' alleged past bonus practices to vary the terms of an unambiguous, integrated agreement. *Id.* ("The parol evidence rule bars the admission of evidence extrinsic to an unambiguous, integrated written contract for the purpose of varying or contradicting the terms of that contract.").

Perron's cited authorities do not justify a different result. *Johnson v. NCAA*, 108 F.4th 163 (3d Cir. 2023), addresses whether college athletes may qualify as employees under the Fair Labor Standards Act. That case says nothing about enforcing an express contractual condition precedent

to a bonus. *Fletcher v. ION Geophysical Corp.*, No. 5109-CS, 2012 Del. Ch. LEXIS 113 (Del. Ch. May 23, 2012), is even further afield, addressing securities law and the rights of preferred stockholders following the issuance of promissory notes. Neither decision authorizes a court to disregard unambiguous contractual language, elevate alleged past practice over the parties' written agreement, or impose an obligation for which the parties did not bargain. Yet Perron's theory requires all three. The Court should instead enforce Section 3(a) as written and hold that no bonus obligation arose because the express performance condition was not satisfied.

*Third*, Perron cannot avoid Section 3(a)'s performance condition by recasting the provision as covering "whatever annual bonus program Covetrus establishes in a given year" merely because it does not refer to the STIP by name. That position contradicts the Complaint's express allegation that "[t]hese STIP related annual bonuses are what was described in Section 3(a) of the Employment Agreement." Compl. ¶¶ 32–33. Having pleaded that Section 3(a) governed the STIP bonuses, Perron cannot disavow that allegation to manufacture a broader contractual entitlement in order to defeat dismissal.

*Fourth*, Covetrus did not become contractually obligated to pay Perron merely because it allegedly made discretionary payments to other executives in 2025. Section 3(a) provides that, if the threshold performance condition were satisfied, Perron's annual bonus would be paid at the same time and on the same terms as bonuses paid to other executives. Properly read in context, that parity provision governs only the timing and terms of payment after a bonus has been earned. It does not create an independent entitlement to a bonus or excuse the provision's antecedent performance condition. This interpretation gives effect to both clauses, whereas Perron's reading would elevate the parity language over—and effectively nullify—the express requirement that any annual bonus remain "subject in all respects" to Covetrus' achievement of company-performance

goals. *See, e.g.*, *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) ("We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage. We will not read a contract to render a provision or term meaningless or illusory."). Because Covetrus did not achieve the required performance goals, Perron never earned a STIP bonus, and the parity provision never became operative. Nor does the Employment Agreement grant Perron any separate right to share in discretionary recognition payments made after the STIP was not funded. Those payments therefore cannot supply the unsatisfied condition precedent, transform discretion into a contractual duty, or create a bonus entitlement that Section 3(a) expressly forecloses.

Accordingly, for these reasons and those set forth in Covetrus' Motion to Dismiss, Perron's breach-of-contract claim fails as a matter of law and should be dismissed.

### C. <u>The Implied Covenant of Good Faith and Fair Dealing Does Not Apply</u>.

Perron's invocation of the implied covenant of good faith and fair dealing fails for two independent reasons. First, the Complaint does not assert an implied-covenant claim, and Perron may not amend his pleading through an opposition brief to avoid dismissal. Second, any such claim would fail as a matter of law because the implied covenant cannot supply a contractual obligation that conflicts with the Employment Agreement's express terms. *See, e.g.*, *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009) ("The implied covenant cannot be invoked to override the express terms of the contract."). Section 3(a) expressly conditioned any annual bonus on Covetrus' achievement of company-performance goals. Because those goals were not achieved, Covetrus acted within the rights conferred by the Agreement when it declined to pay Perron a 2025 STIP bonus. Conduct expressly authorized by the parties' contract cannot support an implied-covenant claim. *See Nemec v. Shrader*, 991 A.2d 1120, 1125–26 (Del. 2010) ("[O]ne

generally cannot base a claim for breach of the implied covenant on conduct authorized by the agreement.") (alteration in original). Perron therefore cannot invoke the implied covenant either to cure his pleading deficiency or to rewrite the bargain the parties actually made, and the Court should reject that argument.

### D. The Unjust-Enrichment Claim Is Duplicative of the Breach-of-Contract Claim and Must Be Dismissed.

Perron mischaracterizes Covetrus' basis for seeking dismissal of the unjust-enrichment claim. To be clear, Covetrus is not taking "two mutually exclusive positions." ECF No. 22 at 16. Covetrus' position is that the explicit terms of the Employment Agreement govern, and under the Agreement, Perron was entitled to neither a 2025 STIP bonus nor any other non-STIP discretionary bonus. As a result, the Employment Agreement governs the parties' relationship and the alleged obligation to pay Perron an annual bonus, and Perron cannot pursue an equitable remedy that merely duplicates his contract claim. *See Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 58 (Del. Ch. 2012) ("It is a well-settled principle of Delaware law that a party cannot recover under a theory of unjust enrichment if a contract governs the relationship between the contesting parties that gives rise to the unjust enrichment claim."). Perron's own allegations confirm that the Employment Agreement governs. In support of his unjust-enrichment claim, Perron alleges that the parties entered into the Employment Agreement, that the Agreement incorporated applicable state and federal law, and that Covetrus breached the Agreement by failing to pay his annual bonus. Compl. ¶¶ 70–73. Those allegations identify no benefit, duty, or misconduct independent of the parties' contract. Instead, they simply recast the same alleged failure to pay a contractual bonus as an equitable claim. Thus, "although Rule 8 permits alternative pleading, that permission is not without limits," and Perron cannot invoke unjust enrichment "when an express and enforceable contract controls the parties' relationship." *KMC Systems, Inc. v. bioMérieux, Inc.*, 2026 WL

2798033, at *9 (Del. Super. Ct. Sept. 17, 2026). Because Perron does not dispute that the Employment Agreement governs the precise subject matter of the dispute, his duplicative unjust-enrichment claim fails as a matter of law and should be dismissed.

**E. <u>Exhibits B and C to the Motion to Dismiss Are Properly Before the Court.</u>**

Exhibits B and C are properly before the Court because they are integral to Perron's claims and concern the very STIP bonus program placed at issue in the Complaint. Perron expressly alleges that "[t]hese STIP related annual bonuses are what was described in Section 3(a) of the Employment Agreement." Compl. ¶¶ 32–33. His Wage Act and contract claims therefore depend on the premise that the STIP governed the bonus he seeks. Having made the STIP the basis of his alleged entitlement, Perron cannot avoid documents describing that program merely because their contents undermine his theory. The exhibits are not collateral materials offered to inject a new factual dispute. Instead, they bear directly on the contractual bonus program that Perron identifies as the source of his claims and are therefore properly considered in resolving the Motion to Dismiss. *See Winshall v. Viacom International, Inc.*, 76 A.3d 808, 818 (Del. 2013) ("[A] plaintiff may not reference certain documents outside the complaint and at the same time prevent the court from considering those documents' actual terms.").

Moreover, consideration of the exhibits does not require the Court to credit Covetrus' characterization of disputed facts or resolve factual conflicts against Perron. *See* ECF No. 22 at 18. Covetrus asks the Court to do precisely what Perron says is permissible: "consider what the document says." *Id.* On their face, Exhibits B and C state that Covetrus did not achieve its 2025 performance metrics, did not fund the STIP pool, and characterized the separate payments at issue as discretionary. Those statements are relevant not because Covetrus asks the Court to infer facts beyond the documents, but because they define the status and operation of the bonus program on

which Perron's claims expressly rely. Perron does not identify any contrary provision in the exhibits or allege that the STIP was funded notwithstanding the unmet metrics, and no amount of discovery can change these facts. The Court may therefore consider the documents for their contents without converting Covetrus' motion into a vehicle for resolving disputed facts. *Winshall*, 76 A.3d at 810 (affirming lower court's dismissal of the claims based, in part, on documents referenced in the complaint).

Accordingly, for these reasons and those set forth in Covetrus' Motion to Dismiss, Perron's claims fail as a matter of law and should be dismissed.

Respectfully Submitted,

COVETRUS, INC.

By its Attorney,


*/s/ Diana A. Balluku*
Diana A. Balluku (Bar No. 006353)
Justin Keith (admitted *pro hac vice*)
GREENBERG TRAURIG, LLP
1 International Place, Suite 2000
Boston, MA 02110
T: (617) 310-5292
diana.balluku@gtlaw.com
justin.keith@gtlaw.com


DATED: October 5, 2026

**CERTIFICATE OF SERVICE**

I, Diana A. Balluku, counsel for Defendant Covetrus, Inc., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to all non-registered participants on October 5, 2026.

*/s/ Diana A. Balluku*
Diana A. Balluku